UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
PIETER VAN DONGEN, Individually and on   :   Civil Action No. 1:11-cv-07320-VM
Behalf of All Others Similarly Situated,   :
                                          :   CLASS ACTION
                    Plaintiff,            :
                                          :
                                          :
        vs.                               :
                                          :
CNINSURE INC., YINAN HU, QIUPING          :
LAI and PENG GE,                          :
                                          :
                    Defendants.           :
                                          :
———————————————————— x


MEMORANDUM IN SUPPORT OF THE MOTION OF JEFF AND LINDA SCHRAM FOR
APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF LEAD
COUNSEL

## I.    PRELIMINARY STATEMENT

Presently pending before this Court is a securities class action lawsuit (the "Action") brought on behalf of purchasers of the American Depositary Shares ("ADSs") of CNinsure Inc. ("CNinsure" or the "Company") between March 2, 2010 and September 14, 2011, inclusive (the "Class Period"). The Action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78u-4) and the Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

Class members Jeff and Linda Schram (together, the "Schrams") hereby move this Court for an Order to: (i) appoint the Schrams as Lead Plaintiffs in the Action under Section 21D of the Exchange Act; and (ii) approve the Schrams' selection of the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") to serve as Lead Counsel.

This motion is made on the grounds that the Schrams are the most adequate plaintiffs, as defined by the PSLRA.  The Schrams suffered losses of $29,224.90 in connection with their purchases of CNinsure ADSs.  *See* Alba Decl., Ex. B.[1]  To the best of our knowledge, this is the greatest loss sustained by any moving Class member or Class member group who has brought suit or filed an application to serve as Lead Plaintiff in this Action.  In addition, the Schrams, for the purposes of this motion, adequately satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure in that their claims are typical of the claims of the putative Class and that they will fairly and adequately represent the interests of the Class.

---

[1]    References to the "Alba Decl., Ex. __" are to the exhibits attached to the accompanying Declaration of Mario Alba Jr., dated December 16, 2011 and submitted herewith.

## II.      FACTUAL BACKGROUND

CNinsure, together with its subsidiaries, provides insurance brokerage and agency services, and insurance claims adjusting services in the People's Republic of China.

The complaint charges CNinsure and certain of its officers and directors with violations of the Exchange Act.  According to the complaint, during the Class Period, defendants issued materially false and misleading statements regarding the Company's business and prospects. Specifically, defendants misrepresented and/or failed to disclose the following adverse facts:  (a) that the Company was materially overstating its net income by understating the costs associated with the Company's scorecard system; (b) that the Company failed to account for incentives provided to the Company's agents as costs since those incentives were reasonably likely to be tendered at a future date; and (c) that, as a result of the foregoing, defendants lacked a reasonable basis for their positive statements about the Company and its prospects.

On December 2, 2010, OLP Global LLC ("OLP Global") issued an analyst report, which claimed that the Company may have understated commission expenses and overstated net income as a result of the way the Company incentivizes its agents.  The OLP Global report alleged that the Company's incentive program was "no different from an equity-based compensation plan."

In reaction to the OLP Global report, the price of the Company's ADSs fell $5.36 per ADS over the next two trading days, or 24%, to close at $16.79 per ADS, on December 3, 2010.

On March 1, 2011, CNinsure announced its financial results for the fourth quarter and year end of 2010, the period ended December 31, 2010.  The Company reported an increase in total operating costs and expenses of 29.0% and an increase in share-based compensation expenses of 298.9% for the same quarter in 2009.

In reaction to the increases in total operating costs and expenses and share-based compensation expenses, the price of CNinsure ADSs fell $1.96 per ADS, or 11%, to close at $15.92 per ADS, on March 2, 2011.

On May 16, 2011, the Company announced that it received a preliminary non-binding proposal letter from a company controlled by defendant Yinan Hu ("Hu"), a co-founder of CNinsure and its Chairman and Chief Executive Officer, and entities affiliated with him to acquire all of the outstanding shares of the Company for $19.00 per ADS.  In response to this announcement, the price of CNinsure ADSs rose $4.16 per ADS, or 32%, to close at $17.32 per ADS.  However, the temporary inflation in the price of the Company's ADSs would be short-lived as the market soon realized that the going private transaction was not likely to happen.

Then, on September 15, 2011, the Company announced that the Special Committee of its Board of Directors received a notice from defendant Hu and companies affiliated with him that "they have unanimously determined to withdraw the non-binding going private proposal dated May 14, 2011."

In reaction to the announcement of the withdrawal of the going private proposal, the price of CNinsure ADSs fell $1.64 per ADS, or 15%, to close at $9.03 per ADS.  The price of the Company's ADSs continued to fall during the next two trading days as the market continued to digest the Company's announcement, closing at $7.31 per ADS on September 19, 2011.

## III.   ARGUMENT

### A.    The Schrams Should Be Appointed Lead Plaintiffs

#### 1.    The Procedure Required By The PSLRA

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(A)(i).  Plaintiff in the Action caused the first notice regarding the pendency of the Action to be published on *Business Wire*, a national, business-oriented newswire service, on October 17, 2011.  *See* Alba Decl., Ex. A.  Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  *See* 15 U.S.C. §78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members.  *See* 15 U.S.C. §78u-4(a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).  *See Foley v. Transocean*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011).

**2.    The Schrams Satisfy the "Lead Plaintiff" Requirements of the Exchange Act**

**a.    The Schrams Have Complied With the Exchange Act and Should Be Appointed Lead Plaintiffs**

The time period in which Class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on December 16, 2011.  Pursuant to the provisions

of the PSLRA and within the requisite time frame after publication of the required notice on October 17, 2011, the Schrams timely move this Court to be appointed Lead Plaintiffs on behalf of all members of the Class.

The Schrams have duly signed and filed a certification stating that they are willing to serve as representative parties on behalf of the Class.  *See* Alba Decl., Ex. C.  In addition, the Schrams have selected and retained competent counsel to represent themselves and the Class.  *See* Alba Decl., Ex. D.  Accordingly, the Schrams have satisfied the individual requirements of 15 U.S.C. §78u4(a)(3)(B) and are entitled to have their application for appointment as Lead Plaintiffs and approval of selection of Lead Counsel, as set forth herein, considered and approved by the Court.

### b.      The Schrams Have the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, as evidenced by, among other things, the accompanying signed certifications, *see* Alba Decl., Ex. C., the Schrams purchased CNinsure ADSs in reliance upon the materially false and misleading statements issued by defendants and were injured thereby.  In addition, the Schrams incurred a substantial $29,224.90 loss on their transactions in CNinsure ADSs. *See* Alba Decl., Ex. B.  The Schrams thus have a significant financial interest in this case. Therefore, the Schrams satisfy all of the PSLRA's prerequisites for appointment as Lead Plaintiffs in the Action and should be appointed Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(3)(B).

### c.      The Schrams Otherwise Satisfy Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims

or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative.  Consequently, "[a]t the lead plaintiff stage of the litigation, in contrast to the class certification stage, 'a proposed lead plaintiff need only make a "preliminary showing" that it will satisfy the typicality and adequacy requirements of Rule 23.'"  *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173 (S.D.N.Y. 2010) (citation omitted).  The Schrams satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiffs.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members.  *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).  Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical.  *See Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004) ("The possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact").  The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical.  *See Ferrari v. Impath, Inc*., No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *10 (S.D.N.Y. July 20, 2004).

The Schrams satisfy this requirement because, just like all other Class members, they: (1) purchased CNinsure ADSs during the Class Period; (2) purchased CNinsure ADSs in reliance upon the allegedly materially false and misleading statements issued by defendants; and (3) suffered

damages thereby.  Thus, the Schrams' claims are typical of those of other Class members since their claims and the claims of other Class members arise out of the same course of events.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class."  The PSLRA directs this Court to limit its inquiry regarding the adequacy of the Schrams to represent the Class to the existence of any conflicts between the interests of the Schrams and the members of the Class.  The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the class members;  and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004).

Here, the Schrams are adequate representatives of the Class.  As evidenced by the injuries suffered by the Schrams, who purchased CNinsure ADSs at prices allegedly artificially inflated by defendants' materially false and misleading statements, the interests of the Schrams are clearly aligned with the members of the Class, and there is no evidence of any antagonism between the Schrams' interests and those of the other members of the Class.  Further, the Schrams have taken significant steps which demonstrate they will protect the interests of the Class: they have retained competent and experienced counsel to prosecute these claims.  In addition, as shown below, the Schrams' proposed Lead Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner.  Thus, the Schrams *prima facie* satisfy the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### B.    The Court Should Approve the Schrams' Choice of Counsel

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent.  In that regard, the Schrams have selected the law firm of Robbins Geller as Lead Counsel, a firm which has substantial

experience in the prosecution of shareholder and securities class actions, including serving as lead counsel in *In re Enron Corp. Securities Litigation*, No. H-01-3624 (S.D. Tex.), in which Robbins Geller achieved the largest recovery ever obtained in a shareholder class action. *See* Alba Decl., Ex. D. Specifically, the court in *Enron* stated:

> The firm is comprised of probably the most prominent securities class action attorneys in the country. It is not surprising that Defendants have not argued that counsel is not adequate. Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities is evident throughout this suit.

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 675 (S.D. Tex. 2006).

Moreover, Robbins Geller attorneys have served as lead counsel in hundreds of securities cases and have recovered over $45 billion for defrauded shareholders. These representations have resulted in: (i) the largest stock option backdating recovery: *UnitedHealth*, $925 million; (ii) the largest opt-out (non-class) securities litigation recovery: *WorldCom*, $651 million; and (iii) the largest merger and acquisition class action recovery: *Kinder Morgan*, $200 million.

## IV.    CONCLUSION

For all the foregoing reasons, the Schrams respectfully request that the Court: (i) appoint the Schrams as Lead Plaintiffs in the Action; (ii) approve their selection of Lead Counsel as set forth herein; and (iii) grant such other relief as the Court may deem just and proper.

DATED: December 16, 2011          ROBBINS GELLER RUDMAN
                                    & DOWD LLP
                                  SAMUEL H. RUDMAN
                                  DAVID A. ROSENFELD
                                  MARIO ALBA JR.


                                           */s/ Mario Alba Jr.*
                                  MARIO ALBA JR.

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
malba@rgrdlaw.com

[Proposed] Lead Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I, Mario Alba Jr., hereby certify that, on December 16, 2011, I caused a true and correct copy of the attached:

Notice of Motion of Jeff and Linda Schram for Appointment as Lead Plaintiffs and Approval of Selection of Lead Counsel;

Memorandum of Law in Support of the Motion of Jeff and Linda Schram for Appointment as Lead Plaintiffs and Approval of Selection of Lead Counsel; and

Declaration of Mario Alba Jr. in Support of the Motion of Jeff and Linda Schram for Appointment as Lead Plaintiffs and Approval of Selection of Lead Counsel

to be served: (i) electronically on all counsel registered for electronic service for this case; and (ii) by first-class mail to any additional counsel.


_____*/s/ Mario Alba Jr.*_____
Mario Alba Jr.