UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PIETER VAN DONGEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CNINSURE INC., et al.,<br><br>Defendants. | x<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>x | Civil Action No. 1:11-cv-07320-VSB-JLC<br><br><u>CLASS ACTION</u><br><br>LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF DISTRIBUTION OF SETTLEMENT PROCEEDS |

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ....................1

II. NOTICE TO THE CLASS SATISFIED RULE 23 AND DUE PROCESS ....................3

III. ARGUMENT ....................4

A. Certification of the Class Is Appropriate ....................4

B. The Settlement Is Fair, Reasonable and Adequate ....................6

1. The Standard for Evaluating Class Action Settlements ....................6

2. The Settlement Is Procedurally Fair ....................8

3. Application of the *Grinnell* Factors Supports Approval of the Settlement ....................10

a. The Complexity, Expense and Likely Duration of the Litigation Support Final Approval of the Settlement ....................10

b. The Reaction of the Class to the Settlement Supports Final Approval of the Settlement ....................11

c. The Stage of the Proceedings and Discovery Completed Support Final Approval of the Settlement ....................12

d. The Reasonableness of the Settlement in Relation to the Risk of Establishing Liability Supports Approval of the Settlement ....................13

e. The Reasonableness of the Settlement in Relation to the Risk of Establishing Damages Supports Final Approval of the Settlement ....................14

f. The Risks of Maintaining the Class Action Through Trial Supports Final Approval of the Settlement ....................15

g. The Ability of Defendant to Withstand a Greater Judgment ....................15

h. The Amount of the Settlement Supports Final Approval ....................16

IV. THE PLAN OF DISTRIBUTION IS FAIR AND ADEQUATE ....................17

V. CONCLUSION ....................18

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aponte v. Comprehensive Health Mgmt.*,
No. 10 Civ. 4825 (JLC), 2013 WL 1364147
(S.D.N.Y. Apr. 2, 2013)....................8

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988)....................15

*Bourlas v. Davis Law Assocs.*,
237 F.R.D. 345 (E.D.N.Y. 2006)....................4

*Cohen v. J.P. Morgan Chase & Co.*,
262 F.R.D. 153 (E.D.N.Y. 2009)....................4

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)....................8

*Darquea v. Jarden Corp.*,
No. 06 Civ. 722 (CLB), 2008 WL 622811
(S.D.N.Y. Mar. 6, 2008)....................6

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)....................4

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).................... *passim*

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012)....................11

*In re Am. Bank Note Holographics Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................17

*In re Bear Stearns Cos. Inc. Sec., Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)....................10, 12

*In re Blech Sec. Litig.*,
187 F.R.D. 97 (S.D.N.Y. 1999)....................6

*In re China Sunergy Sec. Litig.*,
No. 07 Civ. 7895 (DAB), 2011 WL 1899715
(S.D.N.Y. May 13, 2011)....................8

**Page**

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
No. 98 Civ. 4318 (HB), 2000 WL 1357509
(S.D.N.Y. Sept. 20, 2000) ........................................................................................5

*In re Flag Telecom Holdings, Ltd. Sec. Litig*,
No. 02-CV-3400 (CM) (PED), 2010 WL 4537550
(S.D.N.Y. Nov. 8, 2010) ........................................................................................8, 15

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................7, 14

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ..........................................................................12

*In re Longtop Fin. Techs. Sec. Litig.*,
No. 11 Civ. 3658 (SAS), 2013 WL 3486990
(S.D.N.Y. July 11, 2013) ........................................................................................6

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) .........................................................................8, 11

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
No. 02 MDL 1484 (JFK), 2007 WL 4526593
(S.D.N.Y. Dec. 20, 2007) ........................................................................................7

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) ............................................................................7

*In re PaineWebber P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y.),
*aff'd*, 117 F.3d 721 (2d Cir. 1997) ..............................................................8, 9, 11, 16

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................................5

*In re Sony Corp SXRD*,
448 Fed. App'x. 85 (2d Cir. 2011)..........................................................................6

*In re Sony SXRD Rear Projection TV Class Action Litig.*,
No. 06 Civ. 5173 (RPP), 2008 WL 1956267
(S.D.N.Y. May 1, 2008)........................................................................................15

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ..........................................................................10

**Page**

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695 (CM), 2007 WL 4115808
(S.D.N.Y. Nov. 7, 2007) ....................7, 9, 13

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003) ....................17

*In re Wachovia Equity Sec. Litig.,*
No. 08 Civ. 617 (RJS), 2012 WL 2774969
(S.D.N.Y. June 12, 2012)....................9

*In re WorldCom, Inc. ERISA Litig.*,
No. 02 Civ. 4816 (DLC), 2004 WL 2338151
(S.D.N.Y. Oct. 18, 2004) ....................7

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................17

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................11, 12, 17

*Marisol A. by Forbes v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)....................4

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)....................16

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ....................11

*Shapiro v. JPMorgan Chase & Co.*,
Nos. 11 Civ. 8831(CM)(MHD), 11 Civ. 7961(CM),
2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ....................8, 10

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003)....................10

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
No. 01-CV-11814 (MP), 2004 WL 1087261
(S.D.N.Y. May 14, 2004)....................12

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)....................3, 6, 7

**Page**

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)....................3, 8

*Wright v. Stern*,
553 F. Supp. 2d 337 (S.D.N.Y. 2008)....................6

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(a)(4)....................2

Federal Rules of Civil Procedure
Rule 23....................6
Rule 23(a)....................4, 5
Rule 23(b)....................5
Rule 23(b)(3)....................1, 5
Rule 23(c)(2)(B)....................3
Rule 23(e)....................1, 6
Rule 23(e)(1)....................3
Rule 23(e)(2)....................6

**SECONDARY AUTHORITY**

Laami T. Bulan, Ellen M. Ryan & Laura E. Simmons,
*Securities Class Action Settlements, 2013 Review and Analysis*
(Cornerstone Research 2014)....................17

Pursuant to Rules 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs, Jeff Schram and Linda Schram ("Lead Plaintiffs"),[1] respectfully move this Court for an order approving the proposed settlement of the above-captioned class action (the "Action") and approving the proposed Plan of Distribution, each of which this Court preliminarily approved by its Order Preliminarily Approving Settlement and Providing for Notice on April 7, 2014 (the "Preliminary Approval Order") (Dkt. No. 41).

## I. PRELIMINARY STATEMENT

This Action was commenced by the filing of a complaint alleging that Defendant CNinsure and the Unserved Defendants violated the federal securities laws by misrepresenting and concealing from investors that a material portion of its rapid growth and financial success was attributable to an equity incentive compensation scheme, whereby the Company recruited and incentivized its sales agents by promising equity incentive compensation in addition to standard sales commissions. Dkt. No. 1. On March 19, 2014, after more than two years of litigation, the Settling Parties signed the Stipulation resolving Lead Plaintiffs' and the Class' claims for six million six hundred and twenty-five thousand dollars ($6,625,000). Under the terms of the proposed Settlement, these funds will be allocated to all eligible Class Members[2] allegedly impacted by Defendant's alleged violations of the federal securities laws and who file a valid Proof of Claim form.

---

[1] All capitalized terms not defined herein have the same meanings set forth in the Settlement Agreement dated March 19, 2014 (the "Stipulation"), filed with the Court on March 19, 2014. Dkt. No. 40.

[2] The Preliminary Approval Order certified the following Class, for settlement purposes: "[A]ll Persons who purchased CNinsure Inc. ("Defendant" or "CNinsure" or the "Company") American Depository Shares ("ADS") during the period from March 2, 2010, through and including November 21, 2011 (the "Class Period"). Excluded from the Class are the Defendants, the Unserved Defendants, the officers and directors of CNinsure during the Class Period, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in

Lead Counsel respectfully submits that the Settlement is a very good recovery for the Class under the circumstances. As set forth in detail in the accompanying Declaration of Samuel H. Rudman in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, Plan of Distribution of Settlement Proceeds, Award of Attorneys' Fees and Expenses and Award Pursuant to §15 U.S.C. 78u-4(a)(4), dated May 22, 2014 (the "Rudman Declaration" or "Rudman Decl."),[3] when viewed in light of the risks that Lead Plaintiffs would not prevail on Defendant's likely summary judgment motion or at trial, the Settlement is a very favorable result for the Class. In addition, the Settlement also saves the Class the delay posed by continued litigation through summary judgment, trial, and any subsequent appeals.

The Settling Parties reached the Settlement only after vigorously litigating this Action. Lead Plaintiffs' efforts are detailed in the Rudman Declaration and include, *inter alia*: (i) a detailed pre-filing investigation that included the review and analysis of documents filed publicly by CNinsure with the SEC as well as other publicly available information about CNinsure; (ii) responding to and defeating Defendant's motion to dismiss;[4] (iii) commenced fact discovery, including the exchange of document requests and interrogatories; and (iv) mediation before Professor Eric Green, preceded by the exchange of detailed mediation statements and verbal presentations by counsel that culminated in

---

which the Defendant or an Unserved Defendant has or had a controlling interest. Also excluded from the Class are those Persons who timely and validly exclude themselves therefrom.

3 The Rudman Declaration is an integral part of this submission and the Court is respectfully referred to it for a detailed description of, *inter alia*, a summary of the allegations and claims, the procedural history of the Action, the investigation and discovery to date, the events that led to the Settlement, and the risks and uncertainties of continued litigation.

4 Indeed, Lead Plaintiffs investigated and developed their case theory sufficiently to defeat Defendant's motion to dismiss without the benefit of formal discovery (stayed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA")) or any government investigation.

an arm's-length agreement in principle to settle the claims against Defendant. *See* Rudman Decl., ¶¶6-8, 20-48.

In light of Lead Counsel's informed assessment of the strengths and weaknesses of the claims and defenses asserted and the considerable risks and delays associated with continued litigation and trial, Lead Plaintiffs and Lead Counsel believe that the Settlement is fair, reasonable, and adequate and provides a substantial result for the Class. Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement. In addition, the Plan of Distribution, which was developed with the assistance of Lead Plaintiffs' damages expert, is a fair and reasonable method for distributing the Net Settlement Fund to Class Members and should also be approved by the Court.

## II. NOTICE TO THE CLASS SATISFIED RULE 23 AND DUE PROCESS

On April 7, 2014, the Court entered its Preliminary Approval Order (Dkt. No. 41), which directed that a hearing be held on July 9, 2014 to determine the fairness, reasonableness, and adequacy of the Settlement (the "Settlement Hearing"). The Notice provided to the Class satisfied the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Notice also satisfied Rule 23(e)(1), which requires that notice must be provided in a "reasonable manner" – *i.e.*, it must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)).

Pursuant to the Preliminary Approval Order, the Notice was mailed to all known potential Class Members beginning on April 17, 2014, and the Summary Notice was published in *Investor's*

*Business Daily* and transmitted over the *Business Wire* on April 24, 2014. *See* Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing and the Proof of Claim and Release Form, B) Publication of the Summary Notice, and C) Internet Posting ("Mailing Declaration" or "Mailing Decl."), ¶¶3-10, 13. The Notice contains a detailed description of the nature and procedural history of the Action, as well as the material terms of the Settlement, including, *inter alia*: (i) the total recovery under the Settlement; (ii) the manner in which the Net Settlement Fund will be allocated among eligible Class Members; (iii) a description of the claims that will be released in the Settlement; (iv) the right and mechanism for Class Members to opt out or exclude themselves from the Class; and (v) the right and mechanism for Class Members to object to the Settlement, the Plan of Distribution, or the request for attorneys' fees and expenses.

## III. ARGUMENT

### A. Certification of the Class Is Appropriate

Before reaching the merits of the proposed Settlement, the Court must first ensure that the Class, as defined by the parties, is certifiable under the standards of Rules 23(a) and (b) for purposes of the proposed Settlement. *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 349 (E.D.N.Y. 2006); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) ("Before certification is proper for any purpose - settlement, litigation, or otherwise - a court must ensure that the requirements of Rule 23(a) and (b) have been met."). In deciding certification, courts must take a liberal rather than restrictive approach in determining whether plaintiffs satisfy these requirements and may exercise broad discretion in weighing the propriety of a putative class. *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 158 (E.D.N.Y. 2009); *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 377 (2d Cir.

1997) ("'Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility'" in deciding whether to grant certification.).[5]

Under the terms of the Stipulation, the parties have agreed for the sole purpose of the Settlement, and without an adjudication of the merits, to certification of the Class. The Second Circuit has explicitly noted its preference for class certification in securities cases. *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 206 (S.D.N.Y. 1995). Notwithstanding, to obtain class certification, plaintiffs must establish the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation and demonstrate that the action may be maintained under one of the three subsections of Rule 23(b). *See In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318 (HB), 2000 WL 1357509, at *10-*11 (S.D.N.Y. Sept. 20, 2000). Here, Lead Plaintiffs assert that the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) have been satisfied in that:

- the proposed Class is so numerous that joinder of all members is impracticable as there were over 49 million CNinsure ADSs outstanding during the Class Period, and notice was mailed to over 33,100 Class Members in connection with the Settlement;

- based on Lead Plaintiffs' allegations that Defendant and the Unserved Defendants made uniform misrepresentations and omitted material facts in CNinsure's public statements, which affected all Class Members, the claims of Lead Plaintiffs are typical of the claims of the proposed Class they seek to represent;

- Lead Plaintiffs do not have any interests antagonistic to, or in conflict with, the other members of the Class and they will fairly and adequately represent and protect the interests of the other members of the Class as they have retained counsel competent and experienced in class and securities litigation;

- there are questions of law or fact common to the Class which predominate over any questions solely affecting individual members of the Class, including: (i) whether the Defendant's and the Unserved Defendants' actions violated the Securities Exchange Act of 1934; (ii) whether CNinsure's public

[5] Unless otherwise noted, all emphasis is added and citations are omitted.

documents and other statements contained false or misleading statements or omitted material facts; and (v) to what extent the members of the Class have sustained damages and the proper measure of damages; and

- given that joinder of all Class Members is impracticable, certifying a Class is superior to all other available methods for the fair and efficient adjudication of this controversy since prosecuting separate actions by or against individual Class Members would create a risk of: (i) inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendant and the Unserved Defendants; and (ii) adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

*See* Amended Class Action Complaint for Violation of the Federal Securities Laws, ¶¶33-37; *see also*, *e.g.*, *In re Longtop Fin. Techs. Sec. Litig.*, No. 11 Civ. 3658 (SAS), 2013 WL 3486990, at *1-*2 (S.D.N.Y. July 11, 2013) (performing Rule 23 analysis and certifying securities fraud class action); *Darquea v. Jarden Corp.*, No. 06 Civ. 722 (CLB), 2008 WL 622811, at *2-*3 (S.D.N.Y. Mar. 6, 2008); *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) (granting class certification and explaining "in an alleged securities fraud case, when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward"). Accordingly, the Court should certify the Class and appoint Lead Plaintiffs as the Class Representatives.

### B. The Settlement Is Fair, Reasonable and Adequate

#### 1. The Standard for Evaluating Class Action Settlements

Rule 23(e) requires review and approval by the Court for any class action settlement to be effective. A settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Sony Corp SXRD*, 448 Fed. App'x. 85, 86 (2d Cir. 2011). This evaluation requires the court to consider "both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart*, 396 F.3d at 116; *Wright v. Stern*, 553 F. Supp. 2d 337, 343

(S.D.N.Y. 2008); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 165 (S.D.N.Y. 2007).

While the decision to grant or deny approval of a settlement lies within the broad discretion of the trial court, a general policy favoring settlement exists, especially with respect to class actions. *Wal-Mart,* 396 F.3d at 116 ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'"); *see also In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816 (DLC), 2004 WL 2338151, at *5 (S.D.N.Y. Oct. 18, 2004).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *5 (S.D.N.Y. Nov. 7, 2007).

In addition to a presumption of fairness that attaches to a settlement reached as a result of arm's-length negotiations, the Second Circuit has identified nine factors that courts should consider in deciding whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. "[N]ot every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004); *In re Merrill Lynch & Co., Inc.*

*Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 4526593, at *13 (S.D.N.Y. Dec. 20, 2007). Here, the Settlement satisfies the criteria for approval articulated by the Second Circuit.

### 2. The Settlement Is Procedurally Fair

A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations. *See Shapiro v. JPMorgan Chase & Co.*, Nos. 11 Civ. 8831(CM)(MHD), 11 Civ. 7961(CM), 2014 WL 1224666, at *7 (S.D.N.Y. Mar. 24, 2014); *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 315 (E.D.N.Y. 2006). A court may find the negotiating process is fair where, as here, "the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability . . . necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (quoting *Weinberger,* 698 F.2d at 74); *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *3-*4 (S.D.N.Y. May 13, 2011) (court must pay close attention to the negotiating process, that they were at arm's length, and that class counsel had the requisite experience and ability); *In re PaineWebber P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

This initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations and, ultimately, with the assistance of Professor Green, one of the premier mediators in complex, multi-party, high stakes litigation. Rudman Decl., ¶45; *Aponte v. Comprehensive Health Mgmt.*, No. 10 Civ. 4825 (JLC), 2013 WL 1364147, at *3 (S.D.N.Y. Apr. 2, 2013) ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement achieved meets the requirements of due process."); *In re Flag Telecom Holdings, Ltd. Sec. Litig* No. 02-CV-3400 (CM) (PED), 2010 WL

4537550, at *14 (S.D.N.Y. Nov. 8, 2010) (noting that the "presumption in favor of the negotiated settlement in this case is strengthened by the fact that settlement was reached in an extended mediation supervised by [an experienced mediator]"); *In re Wachovia Equity Sec. Litig.,* No. 08 Civ. 617 (RJS), 2012 WL 2774969, at *3 (S.D.N.Y. June 12, 2012). The negotiations that produced this Settlement were substantial. During the mediation, counsel for Lead Plaintiffs and Defendant exchanged mediation briefs and debated the various issues in the Action, including liability, damages and collectability. The negotiations went back-and-forth, with the parties advocating their positions and the strengths and weaknesses of their respective positions being thoroughly debated.

Following the full-day mediation, the parties reached an agreement-in-principle to settle the Action for a cash payment of $6,625,000, and informed the Court of the settlement agreement. There is no question that Lead Counsel, equipped with knowledge from an extensive investigation and evaluation of Lead Plaintiffs' claims, including the briefing on Defendant's motion to dismiss and the preparation of the mediation statement, were fully informed of the merits and weaknesses of the case by the time the agreement to settle was reached. Thus, little doubt exists that this Settlement is entitled to the presumption of procedural fairness dictated by Second Circuit law.

Moreover, Lead Counsel, has extensive experience prosecuting complex securities class actions and is intimately familiar with the facts of this case, and believes that the Settlement is not just fair, reasonable, and adequate, but is an excellent result for Lead Plaintiffs and the Class under the circumstances. This opinion is entitled to "great weight." *PaineWebber*, 171 F.R.D. at 125; *see also Veeco*, 2007 WL 4115808, at *10.

### 3. Application of the *Grinnell* Factors Supports Approval of the Settlement

#### a. The Complexity, Expense and Likely Duration of the Litigation Support Final Approval of the Settlement

"This factor captures the probable costs, in both time and money, of continued litigation." *Shapiro,* 2014 WL 1224666, at *8. Here, the litigation was complex and likely would have lasted for quite some time in the absence of settlement. Indeed, securities class actions are by their very nature complicated and district courts in this Circuit have "long recognized" that securities class actions are "notably difficult and notoriously uncertain" to litigate. *In re Bear Stearns Cos. Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999).

Lead Plaintiffs' claims raise numerous complex legal and factual issues concerning the Company's equity incentive compensation scheme, falsity, scienter and loss causation. *See generally* Rudman Decl., ¶¶70-78. It would be costly and time-consuming to pursue this litigation all the way through to trial, with no guarantee of success. The Defendant and third parties are located outside the United States. Many of the documents, if they could even be obtained, would have to be translated from Chinese. Even if the Class could obtain a judgment at trial, the additional delay through trial, post-trial motions, and the appellate process could prevent the Class from obtaining any recovery for years. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less

valuable than this current recovery.").[6] Furthermore, even winning at a trial does not guarantee a recovery to the Class, because there is always a risk that the verdict could be reversed on appeal. *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law on the basis of loss causation following a jury verdict partially in plaintiffs' favor); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice in securities action). Thus, this factor weighs strongly in favor of approval of the Settlement.

### b. The Reaction of the Class to the Settlement Supports Final Approval of the Settlement

The reaction of the Class to the Settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'" *PaineWebber*, 171 F.R.D. at 126; *see also Luxottica*, 233 F.R.D. at 311-12. At least one court in this District has previously noted that the reaction of the class to a settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'" *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). Here, pursuant to the Preliminary Approval Order, a total of 33,171 copies of the Notice have been mailed to potential Class Members and the Summary Notice was published in *Investor's Business Daily* and issued over the *Business Wire*. *See* Mailing Decl., ¶¶3-10, 13. While the deadline set by the Court for Class Members to exclude themselves from the Class or object to the Settlement has not yet passed, to date, not a single request for exclusion has been received and no objections have been received. If any objections or additional requests for exclusion are received subsequent to filing this brief, Lead Plaintiffs will respond in their reply papers due July 2, 2014.

---

[6] Collecting on any judgment was not assured. CNinsure has no assets in the United States, and it is uncertain whether a Chinese court would enforce any such judgment.

### c. The Stage of the Proceedings and Discovery Completed Support Final Approval of the Settlement

In considering this factor, "the question is whether the parties had adequate information about their claims, such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *Bear Stearns,* 909 F. Supp. 2d at 266 (citing *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) (internal citations, quotation marks and alterations omitted)). To satisfy this factor, parties need not have engaged in formal or extensive discovery. *See Maley*, 186 F. Supp. 2d at 363.[7]

Here, Lead Counsel conducted its own initial investigation without the benefit of any government investigation to formulate its theory of the case and develop sufficient detail to defeat Defendants' motion to dismiss. As set forth in the Rudman Declaration, the investigation included, *inter alia*, reviewing and analyzing publicly available information and data concerning CNinsure; researching relevant areas of Chinese law; consulting with an expert about damages and causation issues; and preparing a mediation statement. *See, e.g.*, Rudman Decl., ¶¶5-8, 90.

Accordingly, Lead Plaintiffs and Lead Counsel have developed a comprehensive understanding of the key legal and factual issues in the litigation and, at the time the Settlement was reached, had "a clear view of the strengths and weaknesses of their case" and of the range of possible outcomes at trial. *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004). Accordingly, this factor supports approval of the Settlement.

---

[7] In fact, in cases such as this one brought under the PSLRA, no formal discovery may proceed until the motion to dismiss is denied.

#### d. The Reasonableness of the Settlement in Relation to the Risk of Establishing Liability Supports Approval of the Settlement

In assessing the Settlement, the Court should balance the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463; *Veeco*, 2007 WL 4115809, at *8-*9. Although Lead Plaintiffs and Lead Counsel believe that they had a reasonable likelihood of prevailing on a motion for class certification and on the claims at summary judgment and at trial, they also recognize that there were considerable risks involved in pursuing the litigation against Defendants that could have led to a substantially smaller recovery or no recovery at all.

As set forth in detail in the Rudman Declaration (¶¶71-74), Lead Plaintiffs faced numerous hurdles to establishing liability. In particular, Defendant raised a number of arguments and defenses in their motion to dismiss, which they would likely raise again at summary judgment and trial involving, *inter alia*: whether there were actionable misstatements and omissions; the ability of Lead Plaintiffs to establish that Defendant acted with scienter; whether CNinsure truthfully responded to the OLP reports; and whether the market reacted to CNinsure's disclosures regarding the Company's equity incentive compensation scheme.

More specifically, Defendants would have continued to challenge Lead Plaintiffs' ability to prove recklessness and motive. In particular, Defendants would likely contend that because the Company truthfully responded to the OLP Report, recklessness could not be established. Rudman Decl., ¶72. CNinsure would also have contended that Lead Plaintiffs would not be able to prove that the Company made material misrepresentations prior to November 2010, when new regulations were promulgated restricting equity compensation, and would therefore be unable to prove that the July 2010 secondary offering provided a motive to defraud. *Id.* CNinsure would further argue that

motive could not be established by the insider stock sales, because they were not suspicious in timing or amount. *Id.*

Defendants undoubtedly would have also continued to argue that any potential investment losses suffered by Lead Plaintiffs and the Class were actually caused by external, independent factors, and not caused by Defendant's alleged conduct. *Id.*, ¶75. In particular, CNinsure would argue that Lead Plaintiffs could not rule out other causes for the declines in CNinsure's share price or disentangle the effects of a shift from equity incentive compensation from allegedly unrelated negative news contained in the November 21, 2011 earnings release. *Id.*

Although Lead Plaintiffs are optimistic in their ability to ultimately prove the claims asserted in the Action, the risks of the case being lost or its value diminished on a pre-trial motion or at trial, when weighed against the immediate benefits of settlement, reinforce Lead Plaintiffs' judgment that the Settlement is in the best interests of the Class.

#### e. The Reasonableness of the Settlement in Relation to the Risk of Establishing Damages Supports Final Approval of the Settlement

Even if Lead Plaintiffs successfully established liability, they also faced substantial risk in proving damages. Once causation is established, damages remain "a complicated and uncertain process, typically involving conflicting expert opinion about the difference between the purchase price and [share]s true value absent the alleged fraud." *Global Crossing*, 225 F.R.D. at 459 (internal quotation omitted). Should Lead Plaintiffs have succeeded in proving liability, considerable risk remained with proving damages at trial. Defendant would dispute Lead Plaintiffs' damage calculation and would challenge the methodology Lead Plaintiffs' expert used to calculate damages. Rudman Decl., ¶76.

Undoubtedly, the Settling Parties' competing expert testimony on damages would inevitably reduce the trial of these issues to a risky "battle of the experts" and the "jury's verdict with respect to damages would depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable." *Flag Telecom*, 2010 WL 4537550, at *18. The complex issues surrounding damages, therefore, support final approval of the Settlement.

**f. The Risks of Maintaining the Class Action Through Trial Supports Final Approval of the Settlement**

The parties had yet to commence class certification briefing, and it was far from certain that the Court would certify Lead Plaintiffs' proposed class, as the relevant standard for such a motion is currently under review by the Supreme Court. Rudman Decl., ¶¶80-81. In the event that the Supreme Court overrules or modifies its prior holding in *Basic, Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988), Lead Plaintiffs' burden in certifying a class could be increased. This Settlement eliminates that risk to the Class. Nevertheless, regardless of the outcome of the *Halliburton* case, CNinsure indicated that it would vigorously oppose class certification by arguing, among other things, that Lead Plaintiffs were neither adequate nor typical class representatives because they sold all of their CNinsure ADSs before the end of the Class Period. Because the Settlement avoids any uncertainty with respect to these issues, this factor weighs in favor of the Court finally approving the Settlement.

**g. The Ability of Defendant to Withstand a Greater Judgment**

The court may also consider the defendants' ability to withstand a judgment greater than that secured by settlement. *Grinnell*, 495 F.2d at 463. It is not clear if CNinsure has financial resources to pay a greater judgment if obtained. The fact that CNinsure might have been able to pay more money, however, does not render the Settlement unreasonable. *See In re Sony SXRD Rear*

*Projection TV Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008) ("a defendant is not required to 'empty its coffers' before a settlement can be found adequate"). Moreover, given the collectability issues surrounding Chinese companies, even if Lead Plaintiffs were successful and obtained a larger judgment after trial and the exhaustion of appeals, there is a risk that it would be a Pyrrhic victory.

**h. The Amount of the Settlement Supports Final Approval**

The last two substantive factors courts consider are the range of reasonableness of a settlement in light of (i) the best possible recovery and (ii) litigation risks. *Grinnell*, 495 F.2d at 463. In analyzing these last two factors, the issue for the Court is not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case. The court "'consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable.'" *Id*. at 462. Courts agree that the determination of a "reasonable" settlement "is not susceptible of a mathematical equation yielding a particularized sum." *PaineWebber*, 171 F.R.D. at 130 (internal quotation marks omitted). Instead, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

The Settlement here provides a recovery well within the range of reasonableness in light of the best possible recovery and all the attendant risks of litigation. According to analyses prepared by Lead Plaintiffs' consulting damages expert, using certain assumptions and modeling, the maximum damages recoverable by the Class would be approximately $189 million (assuming 100% recovery for the entirety of the Class Period). Rudman Decl., ¶50. The $6.625 million Settlement therefore

represents a recovery of approximately 3.5% of estimated damages.[8] This recovery, particularly in view of the risks and uncertainties discussed above, falls well within the range of possible approval and deserves the Court's approval. This factor therefore strongly supports final approval of the Settlement.

Accordingly, Lead Counsel submits that this Court should find that the *Grinnell* factors, taken together, weigh in favor of Settlement and that the Settlement should be approved.

## IV. THE PLAN OF DISTRIBUTION IS FAIR AND ADEQUATE

The standard for approval of a plan of distribution is the same as the standard for approving the settlement as a whole: "'namely, it must be fair and adequate.'" *Maley*, 186 F. Supp. 2d at 367; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005). "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case.'" *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003). A plan of distribution "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *In re Am. Bank Note Holographics Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001); *see also WorldCom*, 388 F. Supp. 2d at 344 (same).

The Plan of Distribution, which was fully described in the Notice, was prepared with the assistance of Lead Plaintiffs' consulting damages expert. It provides for the distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata basis* based upon each Class Member's "Recognized Loss," as calculated by the formulas described in the Notice. These formulas are tied

---

[8] The median settlement in 2013 for cases without a public pension as a lead plaintiff is $3 million. Laami T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements, 2013 Review and Analysis*, at 15 (Cornerstone Research 2014). The median settlement in 2013 as a percentage of estimated damages was 2.1%. *Id.* at 8-9.

to the amount of alleged artificial inflation in the share prices, as quantified by Lead Plaintiffs' expert. Accordingly, the proposed Plan of Distribution is designed to fairly and rationally allocate the proceeds of this Settlement among the Class. *See* Rudman Decl., ¶¶92-95. Notably, no Class Member has objected to this straightforward Plan of Distribution.[9] Accordingly, Lead Counsel respectfully requests that this Court approve the Plan of Distribution.

## V. CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement, approve the Plan of Distribution of the Net Settlement Fund, and enter the proposed Final Judgment and Order and proposed Order approving the Plan of Distribution of Net Settlement Fund. Proposed orders will be submitted with Lead Plaintiffs' reply papers, after the deadline for objecting and seeking exclusion has passed.

DATED: May 22, 2014

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
ERIN W. BOARDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
& DOWD LLP
ELLEN GUSIKOFF STEWART

s/ Ellen Gusikoff Stewart

ELLEN GUSIKOFF STEWART

[9] If any objection to the Plan of Distribution is received subsequent to filing this brief, Lead Plaintiffs will respond in their reply papers due July 2, 2014.

655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 22, 2014.

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: elleng@rgrdlaw.com

# Mailing Information for a Case 1:11-cv-07320-VSB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeremy Todd Adler**
  jeremy.adler@davispolk.com
- **Mario Alba , Jr**
  malba@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@rgrdlaw.com
- **Jeffrey A. Berens**
  jeff@dyerberens.com
- **Erin Whitney Boardman**
  eboardman@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **Marshall Pierce Dees**
  mdees@holzerlaw.com
- **Michael Ira Fistel , Jr**
  mfistel@holzerlaw.com,cholzer@holzerlaw.com,cyoung@holzerlaw.com
- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com
- **David Brendan Toscano**
  david.toscano@dpw.com
- **Brian Stryker Weinstein**
  brian.weinstein@dpw.com,david.toscano@davispolk.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)